

UNITED STATES OF AMERICA,

Plaintiff,

v.

RAMÓN ESPINOZA-AGUILAR,

Defendant.

Case No. 08-CR-108-SWS

# ORDER DENYING MOTION FOR SENTENCE REDUCTION (COMPASSIONATE RELEASE)

This matter comes before the court on Defendant Ramón Espinoza-Aguilar's ("Defendant" or "Petitioner") *pro se* "Motion for Sentence Reduction Under 18 U.S.C. § 3582, et seq. and USSG 1B1.10, . . . And Motion for Appointment of Counsel[.]" (ECF No. 1111.) Defendant's motion requests both "compassionate release" under United States Sentencing Guidelines Amendment 814, U.S.S.G. § 1B1.13 for "extraordinary and compelling reasons" and once again seeks a reduction in his sentence under Amendment 821, U.S.S.G. § 1B1.10. (ECF No. 1111 at 1.) Defendant further requests that the Court appoint him an attorney because Defendant, "acting pro se, drafted his Motion under Amendment 821, however, in the abundance of caution, [Defendant] is unable to explain how [Defendant's] criminal history points and guideline range would be different under Amendment 821 because of the lack of proper documentation and professional assistance." (ECF No. 1111 at 10.) Having considered the motion and the response filed by the United States (ECF No. 1113), the Court finds a reduction in Defendant's sentence is not warranted either under either Amendment 814 or Amendment 821. Therefore, Defendant's motion is denied, as is his request to be appointed counsel.

## BACKGROUND

Following a six-day trial in April 2009, a jury found Defendant guilty of one count of Conspiracy to Possess with Intent to Distribute, and to Distribute, Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(1)(A), 846, and 851, and one count of Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(a), (b), and (c). (ECF No. 471.) Defendant was initially sentenced to 384 months imprisonment and 10 years of supervised release. (ECF No. 462.) On September 26, 2011, the Court amended Defendant's judgment and sentence, determining that his conviction for Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine was a lesser included offense to Continuing Criminal Enterprise. (ECF No. 618 at 1.) Accordingly, this Court vacated his conviction for Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine and amended Defendant's sentence to a term of 384 months imprisonment and 5 years of supervised release. (Id. at 2.) The Court later determined per Retroactive Drug Table Amendment 782, that Defendant was entitled to a further reduction of his sentence and thereby ordered that Defendant's sentence be reduced to 360 months imprisonment. (ECF No. 782 at 1–2; ECF No. 1102 at 1–2.)

On November 29, 2023, Defendant filed a motion requesting a further reduction in his sentence under the zero-point offender provision of Amendment 821, Part B and requesting the assistance of counsel. (ECF No. 1103.) The Court denied that motion because Defendant was ineligible for any sentence reduction under Part B of Amendment 821 pursuant to the first requirement of U.S.S.G. § 4C1.1(a)—criminal history points. (ECF No. 1109.) Defendant had been assessed three criminal history points under U.S.S.G. § 4A1.1(a), giving him a criminal history category of II, because of his conviction in 2001 and five-year prison sentence for conspiracy to manufacture methamphetamine. (Id. at 4–5.) The Court also denied Plaintiff's

request to be appointed counsel. (Id. at 5.) A little over four months later, Defendant filed his instant motion, again requesting a sentence reduction and "compassionate release." (ECF No. 1111.) The United States filed a response and opposes Defendant's motion on all grounds. (ECF No. 1113 at 3.)

**DISCUSSION**

Defendant proceeds without the assistance of an attorney; therefore, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the court cannot act as his advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and *pro se* parties must follow the same rules of procedure that govern other litigants. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

I. **Defendant's Request for Compassionate Release Under U.S.S.G. 1B1.13**

First, Defendant's motion requests compassionate release under Amendment 814, U.S.S.G. 1B1.13, contending that he has "extraordinary and compelling reasons" for his release. (ECF NO. 1111 at 6.) "Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526, (2011) (internal quotation marks and citation omitted). "One such exception is contained in § 3582(c)(1)" regarding compassionate release. *United States v. McGee*, 992 F.3d 1035, 1041 (10th Cir. 2021). The specified circumstances are jurisdictional prerequisites to any sentence reduction under the statute. *See United States v. Smartt*, 129 F.3d 539, 541 (10th Cir. 1997) ("Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lacked jurisdiction to consider [defendant's] request."); *United States v. Brown*, 556 F.3d 1108, 1113 (10th Cir. 2009). An inmate seeking compassionate release under § 3582(c) has the burden to show the statute authorizes a

reduction of his or her sentence. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) (defendant bears burden of demonstrating entitlement to relief under § 3582(c)(2)); *Saldana*, 807 F. App'x at 820 (movant required to show § 3582(c) authorizes relief for the court to have jurisdiction); *United States v. Pullen*, 2020 WL 4049899, at *2 (D. Kan. July 20, 2020) ("defendant requesting compassionate release bears the burden of establishing that compassionate release is warranted under the statute").

1. **Exhaustion of Administrative Rights**

As modified by the First Step Act, § 3582(c)(1)(A) allows a defendant to directly file a motion for compassionate release with the district court after "either exhausting administrative rights to appeal the Director of the BOP's failure to file such a motion or the passage of 30 days from the defendant's unanswered request to the warden for such relief." *McGee*, 992 F.3d at 1042; *see United States v. Hemmelgarn*, 15 F.4th 1027, 1030 (10th Cir. 2021) (noting § 3582(c)(1)(A) requires exhaustion of administrative remedies for a court to consider an inmate's motion absent waiver as a claim processing rule); *see also Malouf v. Sec. Exchange Comm'n*, 933 F.3d 1248, 1256 (10th Cir. 2019) (courts cannot excuse statutory exhaustion requirements absent express exception). Of importance, such a request must be made to the warden of the defendant's facility. 18 U.S.C. § 3582(c)(1)(A); *see e.g., United States v. Gineyard*, 2021 WL 531969, at *3 (D. Conn. Feb. 12, 2021) (denying compassionate release when motion was not made to warden at inmate's current facility). An inmate is typically required to provide proof that he or she exhausted all administrative rights. *See Hemmelgarn*, 15 F.4th at 1030.

Here, Defendant has failed to prove that he exhausted all administrative rights. Defendant provides no evidence that he submitted a request for compassionate release to the warden at FCI Yazoo City Low, where Defendant is being held. At most, in his petition Defendant has included

a certification that he deposited a copy of his motion with the prison officials at FCI Yazoo City Low for mailing on May 22, 2024. (ECF No. 1111 at 13–14.) His present motion, however, is only directed to the court and contains no request for compassionate release from his warden, and there is no indication that any request directed to the warden was granted or denied after May 22, 2024. Therefore, Defendant filed this motion without exhausting the 30-day period during which the warden was entitled to have before making any response to a request for compassionate release by Defendant. 18 U.S.C.A. § 3582(c)(1)(A). Because Defendant has failed to show proof that he requested compassionate relief from his current warden at FCI Yazoo City Low, and because he has also failed to show either that any such request was denied or that 30 days from the date of his request has lapsed, he has not provided the necessary proof of his exhaustion of administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A). Likewise, the Government has not waived this argument, and has expressly raised it in their opposition to Defendant's early release. (ECF No. 1113 at 5.) Therefore, Defendant's motion for compassionate release must be denied for failure to exhaust his administrative rights.

**2. Extraordinary & Compelling Reasons**

However, even if Defendant had exhausted his administrative remedies, granting compassionate release would be inappropriate because Defendant has failed to demonstrate extraordinary or compelling reasons which would warrant his release. Defendant contends that he faces extraordinary and compelling circumstances because:

> First, Petitioner has been incarcerated for over 15 years of his sentence. Second, Petitioner received an unusually long sentence. And third, Petitioner has a remarkable record of rehabilitation showing that, if released, he is no danger to the public.

(ECF No. 1111 at 6.) Defendant also argues that his incarceration and placement in "locked down" solitary confinement during the COVID-19 pandemic, was "unusually harsh and inhumane and demoralizing." (Id. at 3.)

Under § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment upon motion of a defendant who has exhausted his administrative rights under the Tenth Circuit's "three part test":

> a district court must (1) find whether extraordinary and compelling reasons warrant a sentence reduction; (2) find whether such reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) consider any applicable 18 U.S.C. § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case.

*United States v. Bradley*, 97 F.4th 1214, 1217 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 937–38 (10th Cir. 2021) and *McGee*, 992 F.3d at 1042)) (internal quotations omitted). "To *grant* a motion for compassionate release, . . . the district court must of course address all three steps." *Id*. (citations omitted) (emphasis in original). However, "district courts may *deny* compassionate-release motions when any of the three prerequisites . . . is lacking and do not need to address the others." *Id*. at 1218 (citing *McGee*, 992 F.3d at 1043) (emphasis added).

At step one of the three-part test for compassionate release, District Courts "have the authority to determine for themselves what constitutes extraordinary and compelling reasons." *Hald*, 8 F.4th at 938 n.4; *McGee*, 992 F.3d at 1044 ("Congress intended to afford district courts with discretion, in carrying out the first step of the statutory test in § 3582(c)(1)(A)(i), to independently determine the existence of extraordinary and compelling reasons . . . ."). However, this broad discretion is circumscribed at step two of the statutory test by the applicable policy statements of the Sentencing Commission. *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

At step one, however, this Court, as have other courts, turns to the dictionary definitions of "extraordinary" and "compelling" when applying this first step. *see also United States v. Thompson*, 2024 WL 1557126, at *10 (D.N.M. Apr. 10, 2024). "Extraordinary" denotes something that is "beyond what is usual, regular, or customary" or "exceptional to a very marked extent.""Extraordinary," *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/extraordinary (last accessed June 24, 2024). Likewise, "compelling" describes something that is "forceful," "convincing," and "demanding attention." *Id.*, defining "compelling." Thus, circumstances falling in the category of "extraordinary and compelling" are not ordinary matters; there must be something about them striking one as unusual and significant and demanding attention.

### A. COVID-19

While the existence of the COVID-19 pandemic, when in full-swing, could no doubt have been described as "extraordinary insofar as it is beyond what is usual[.]" *United States v. Weaver*, 2021 WL 2290781, at *2 (D. Colo. June 3, 2021)).[1] However, even during the COVID-19 pandemic, generalized conditions at a Defendant's facility and hardships "shared by nearly every inmate [were] not extraordinary and compelling." *United States v. Ortiz-Hernandez*, 2023 WL 8094965, at *2 (D.N.M. Nov. 21, 2023). Undoubtedly, conditions for prisoners during the COVID-19 pandemic were difficult, particularly as the BOP implemented restrictions in an attempt to control the spread of the virus. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison

---

[1] However, in 2024, over four years after the emergence of the COVID-19 virus, coping with the virus can now be described as "usual" and "ordinary," particularly as the Centers for Disease Control ("CDC") declared an end to the COVID-19 public health emergency over a year ago in May of 2023. End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, CENTERS FOR DISEASE CONTROL, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=What%20You%20Need%20to%20Know,share%20certain%20data%20will%20change (last visited June 24, 2024).

alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.") As such, "the mere fact that COVID-19 exists" without Defendant demonstrating that his individual circumstances made him particularly vulnerable to serious harm from the virus, cannot be used to show extraordinary or compelling circumstances warranting release. *United States v. Warren*, 22 F.4th 917, 928–29 (10th Cir. 2022); *Weaver*, 2021 WL 2290781, at *2 (Dangers during the pandemic must be "compelling in the movant's particular circumstances.").

Here Defendant provides no indication as to why experiencing a lockdown during the COVID-19 pandemic was any different from conditions shared by every inmate at his facility. Nor does Defendant argue or produce any evidence showing that his individual circumstances—health or otherwise—make him particularly vulnerable to serious harm from the COVID-19 virus moving forward. Additionally, as of May 2023, the Centers for Disease Control ("CDC") declared an end to the COVID-19 public health emergency. End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, CENTERS FOR DISEASE CONTROL, https://archive.cdc.gov/www_cdc_gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=What%20You%20Need%20to%20Know,share%20certain%20data%20will%20change (last visited June 24, 2024). In addition it does not appear to be an acute danger that Defendant will contract COVID-19, as Defendant's correctional facility, FCI Yazoo City Low, only reports two open cases of COVID-19 in a facility which houses 4467 prisoners, of which 2188 are fully vaccinated. See Inmate COVID-19 Data, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last viewed June 24, 2024). The Court therefore finds that Defendant's individual circumstances, as they relate to the COVID-19 virus, do not constitute extraordinary and compelling circumstances for compassionate release.

## B. Defendant's Length of Sentence and Rehabilitation

Furthermore, Defendant's remaining arguments regarding the length of his sentence and his rehabilitation are unsupported, do not support extraordinary and compelling reasons for his release, and are inconsistent with the Sentencing Commission's Policy Statement U.S.S.G. § 1B1.13. A "district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion." *Concepcion v. United States*, 597 U.S. 481, 486–87 (2022). "Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." *Id*. at 487. Even so, "the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Id*. Instead, the Tenth Circuit has held that, under the First Step Act, considering an argument does not mean that a District Court needs to explicitly address or accept every argument raised by the parties. *Bradley*, 97 F.4th at 1223 ("[W]e find no basis to impose upon the district court a requirement to address every nonfrivolous, material argument raised by the defendant . . . Here, it is apparent the district court did not accept [defendant's] arguments, not that it failed to consider them.")

Additionally, "the discretion afforded to district courts in step one of the three-part statutory test" for determining whether there exists extraordinary and compelling reasons for release "is bounded by the requirement under step two of the statutory test that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission." *Maumau*, 993 F.3d at 832. Relevant to Defendant's instant arguments, the Sentencing Commission's policy statement § 1B1.13(b)(6) provides:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). However, the mere fact that Defendant has spent a long time in prison does not automatically support his motion for compassionate release, "[o]therwise, anyone who serves a significant amount of time in prison could be eligible for compassionate release regardless of his crimes simply because he has served part of a long sentence." *Bradley*, 97 F.4th at 1222.

Although Defendant has served 15 years in prison—a significant time—he has still only served roughly half of his total sentence of 30 years. Defendant has not cited any relevant change in the law, nor does Defendant provide any support for his contention that he has received an unusually long sentence for the crime which he committed as compared to defendants with a similar record found guilty of similar conduct. *See* 18 U.S.C. § 3553(a)(6).[2] Indeed, when Defendant was sentenced in 2009, Count 1 for which he was convicted—conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 and 851—carried a sentencing range of no less than 20 years and no more than life imprisonment, for an offender like Defendant who had been previously convicted of a prior felony drug offense. 21 U.S.C. § 841(b)(1)(A) (2009). If Defendant was sentenced today, under the present version of 21 U.S.C. § 841(b)(1)(A), the sentencing range for which Defendant would have been convicted for Count 1 would be "not less than 15 years and not more than life imprisonment." 21 U.S.C. § 841(b)(1)(A) (2022). For Count 2, continuing criminal enterprise in violation of 21 U.S.C. 848(a),

---

[2] Additionally, as discussed below, Defendant is not entitled to a reduced sentence under Amendment 821 to the Sentencing Guidelines, which is nevertheless excluded from consideration under U.S.S.G. § 1B1.13(b)(6).

(b), and (c), there has been no change in the sentencing guideline range between 2009 and 2022. 21 U.S.C. § 848(a) (2006).

Accordingly, Defendant's sentence of 360 months imprisonment is still well within the sentencing range contemplated by the provisions of the criminal code which Defendant violated, notwithstanding the change between the 2009 and 2022 versions of 21 U.S.C. § 841(b)(1)(A) which lowered the minimum term of imprisonment from 20 to 15 years. The maximum term of imprisonment for both the 2009 and 2022 versions remained life. Therefore, Defendant's sentence of 30 years is not unusually long nor would it be substantially different from the sentencing range which a different defendant with a similar record found guilty of similar conduct could likely receive if sentenced today.

Second, Defendant contends that he has a "remarkable record of rehabilitation" while in prison. (ECF No. 1111 at 6) Policy Statement § 1B1.13(d) provides that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." Even so, the policy statement allows that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Here, however, Defendant's only contention regarding his "remarkable record of rehabilitation" is that he "has actively participated in and completed multiple evidence-based recidivism reduction programs and BOP assigned courses, which have positively impacted [his] rehabilitation efforts." (ECF No. 1111 at 3.) Defendant provides no evidence to support this argument, and his current individualized Needs Plan Program Review, provided by the Government, shows that while Defendant has completed several educational courses while incarcerated, he has only completed a single course in the last ten years—"RPP/SELF DISC &

EM CONT" from January to June, 2016. (ECF No. 1112-3 at 1–2.) Additionally, as recently as December 2023, Defendant was disciplined for "possessing a hazardous tool." (ECF No. 1112-1). This disciplinary record certainly raises doubt as to whether Defendant would no longer pose a danger to public safety if released, and speaks against his allegedly "remarkable record of rehabilitation" while in prison. Even if the Court were to conclude that Defendant has a "remarkable record of rehabilitation"—which it does not—given that there are no other extraordinary and compelling circumstances to consider in conjunction with Defendant's rehabilitation, compassionate release would nevertheless be unwarranted for Defendant.

In sum, due to Defendant's failure to exhaust his administrative rights and failure to show extraordinary and compelling circumstances consistent with the policy statements of the U.S. Sentencing Commission, his request for compassionate release is denied.

## II.     Defendant's Request for a Sentence Reduction Under U.S.S.G. 1B1.10

Once again, like four months ago, Defendant's motion also appears to request a sentence reduction under Amendment 821 to the Federal Sentencing Guidelines, U.S.S.G. § 1B1.10. (*See* ECF No. 1111 at 1, 5–6, 10.) Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) ("[S]entence modifications are to be the exception, not the rule."). Congress has carved out a few narrow exceptions to this rule. Section 3582(c)(2) permits a district court to modify a defendant's sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The court may reduce a term of imprisonment, after considering the applicable § 3553(a) factors, only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(2).

A sentence reduction is authorized under § 3582(c) only if the defendant was originally "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." § 3582(c)(2). "If a change in the guidelines would not lower the offense level or criminal-history category of the defendant (or lower the sentencing range for that combination of offense level and criminal history), then the defendant cannot say he 'has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *United States v. Dryden*, 563 F.3d 1168, 1171 (10th Cir. 2009). To that end, the Sentencing Commission's applicable policy statement, found at U.S.S.G. § 1B1.10(a)(2)(B), admonishes a "reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if . . . an amendment . . . does not have the effect of lowering the defendant's applicable guideline range." It follows, then, for a change in the Sentencing Guidelines to lower a defendant's sentencing range, the defendant must be eligible for the reduction under the amendment's criteria.

While Defendant does not specify exactly upon which grounds under Amendment 821 he would be entitled to relief, as discussed above, this Court has already clearly and fully foreclosed his eligibility for a sentence reduction under Part B of Amendment 821 and U.S.S.G. § 4C1.1(a), for certain "zero point" criminal offenders. (ECF No. 1109.) Furthermore, as correctly recognized by the United States, Defendant is likewise not entitled to a reduced sentence under Part A of Amendment 821, U.S.S.G. 4A1.1(e). (*See* ECF No. 1113 at 11–12.) Part A of Amendment 821, U.S.S.G. 4A1.1 concerns the calculation of criminal history status points for a determination of a defendant's criminal history score based on a defendant's prior criminal history and whether the defendant committed his instant offense while still serving part of a prior criminal justice sentence.

The 2009 version of Part A of Amendment 821, in effect when Defendant was originally sentenced, assigned the following points in the following circumstances:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item.
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
> (e) Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under (a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.
> (f) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was counted as a single sentence, up to a total of 3 points for this item.

U.S.S.G. 4A1.1(a)–(f) (2009). Amendment 821 altered Part A in November 2023, and assessed the following points under the following circumstances:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
> (d) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.
> (e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. 4A1.1(a)–(e) (2023).

At the time of Defendant's sentencing in July of 2009, Defendant had been assessed three criminal history points under the 2009 version of U.S.S.G. § 4A1.1(a), giving him a criminal history category of II, due of his conviction in 2001 and five-year prison sentence for conspiracy

to manufacture methamphetamine. (ECF Nos. 462, 1109 at 4–5; Presentence Investigation Report for Ramón Espinoza Aguilar at 13.) However, as illustrated above, the 2023 version of U.S.S.G. § 4A1.1(a) did not change from the 2009 version, and if sentenced today, Defendant would still receive "3 points for each prior sentence of imprisonment exceeding one year and one month" because of his 2001 criminal conviction, thereby still resulting in a criminal history category of II. U.S.S.G. 4A1.1(a). Amendment 821 does not have the effect of lowering Defendant's applicable guideline range, and he is not entitled to a sentence reduction on that basis.

Defendant was not assessed any other criminal history points for any other reason under Part A. By the time Defendant committed the acts for which he was sentenced in this Court, he had already completed his five year sentence in California, and therefore, was not assessed additional points, for example, under paragraph (d) in the 2009 version of Part A. U.S.S.G. 4A1.1(d) (2009) (assessing 2 points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."). Therefore, the fact that Part A was changed under Amendment 821 to assess only 1 point to a defendant who committed "the instant offense while under any criminal justice sentence" still does not have the effect of lowering the defendant's applicable guideline range. In 2009 he was not assessed any points for committing the instant offense while still under a criminal justice sentence. U.S.S.G. 4A1.1(e) (2023). As such, Amendment 821's "change in the guidelines would not lower the offense level or criminal-history category" of Defendant; therefore, he "cannot say that he 'has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission.'" *Dryden*, 563 F.3d at 1171. Defendant's request for a Sentence Reduction under Amendment 821 is also therefore denied.

### III. Defendant's Request to be Appointed Counsel

The Court now turns to Defendant's request to be appointed counsel to help him in his request for consideration of a sentence reduction under Amendments 814 and 821. (ECF No. 1111 at 10.) The Tenth Circuit Court of Appeals has held that "there is no constitutional right to counsel to aid in a defendant's request for compassionate release" under § 3582(c)(1). *Hemmelgarn*, 15 F.4th at 1032. Nor is there a right to counsel when a prisoner is pursuing a § 3582(c)(2) motion for a sentence reduction based on a sentencing range that has subsequently been lowered by the Sentencing Commission. *United States v. Olden*, 296 F. App'x 671, 674 (10th Cir. 2008) (noting that other circuits have likewise held that there is "no constitutional right to appointed counsel exists for the purpose of bringing a § 3582(c)(2) motion for a reduction of sentence."). Furthermore, when a request for a sentence reduction is "clearly foreclosed by law" a District Court does not abuse its discretion in denying such a request for counsel. *Id*.

Here, because Defendant has no right to counsel to pursue his request for compassionate release or his request for a sentence reduction under Amendment 821, and because both those grounds for relief are clearly foreclosed by law, Defendant's request for the appointment of counsel must also be denied. *Id*. ("Given no right to counsel exists and [Defendant's] request for a sentencing reduction is clearly foreclosed by law, the district court did not abuse its discretion in denying his request for counsel.")

## CONCLUSION AND ORDER

**IT IS THEREFORE ORDERED** that Defendant Ramón Espinoza-Aguilar's *pro se* "Motion for Sentence Reduction Under 18 U.S.C. § 3582, et seq. and USSG 1B1.10, . . . And Motion for Appointment of Counsel[.]" (ECF No. 1111.) requesting both compassionate release, a sentence reduction under Amendment 821, and appointment of counsel is **DENIED**.

**DATED** July 24th, 2024.

Scott W. Skavdahl
United States District Judge